**Vincente SANTANA, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 45A05–9609–CR–353.**

Court of Appeals of Indiana.

Dec. 9, 1997.

James F. Stanton, Superior Court of Lake County, Appellate Division, Crown Point, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Katherine L. Modesitt, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BARTEAU, Judge.

Vincente Santana appeals his conviction, following a jury trial, of murder. He has raised the following issues:

1. Did the trial court commit fundamental error when it failed to provide the jury with a voluntary manslaughter instruction?

2. Did the trial court commit fundamental error when it provided the jury with a voluntary intoxication instruction?

3. Did Santana receive ineffective assistance of counsel?

We affirm.

### FACTS

The facts which are most favorable to the verdict indicate that in January of 1991, Vincente Santana ("Vincente") and Mary Santana ("Mary"), although they were married and had two children, were living apart from one another. Mary lived in the marital residence with the children, and Vincente lived elsewhere. In April of 1991, Mary began to date Martin Lulinski ("Martin").

During the early morning of August 7, 1991, Mary and Martin were asleep in Mary's bedroom. At 3:30 a.m., Martin woke Mary and told her that someone was knocking at the front door. Mary then got out of bed, entered the living room, and, looking out the window, saw Vincente leaving the porch. Assuming that Vincente was drunk, Mary went back to bed.

Before he left the porch, Vincente peered through a window and saw Martin inside the marital residence. Filled with anger and jealousy after seeing Martin, Vincente went home, retrieved a handgun with which he intended to "hurt" Martin, and returned to Mary's residence. When Vincente knocked on the front door, Mary again got out of bed, went to the living room, and saw him through the window. Mary then went to the front screen door and spoke with Vincente. She asked Vincente what he wanted, and he replied that he wanted to talk with her. She told him that he was drunk and that he should go home. Vincente then became agitated and tried to pull open the screen door. Mary, while trying to keep the door shut, noticed that Vincente had a small, black object in his hand, which she would later discover was a handgun.

Vincente was finally able to open the screen door. Mary then withdrew into the house, attempting to close the living room door. The door was locked with Martin's assistance. Vincente then left the house and went to an open window near the porch. He shot Martin through the window. Martin died of his gunshot wounds.

### VOLUNTARY MANSLAUGHTER INSTRUCTION

Vincente seems to claim that the trial court committed fundamental error when it did not, *sua sponte*, provide the jury with a voluntary manslaughter instruction. "For an error to be fundamental, it must 'be so prejudicial to the rights of a defendant as to make a fair trial impossible.'" *Tobias v. State*, 666 N.E.2d 68, 69 (Ind.1996) (quoting *Barany v. State*, 658 N.E.2d 60, 64 (Ind. 1995)). "The denial of a specific constitutional right does not automatically constitute fundamental error." *Hart v. State*, 578 N.E.2d 336, 337 (Ind.1991). We note that at trial, Santana's attorney neither tendered a voluntary manslaughter instruction nor objected to the lack of this instruction. Under these circumstances, we conclude that the trial court did not commit fundamental error. When the defendant fails to tender a particu-

lar instruction, and he does not object to the lack of that instruction, a court does not commit fundamental error when it fails to give that instruction. *See Harris v. State,* 268 Ind. 594, 377 N.E.2d 632, 634 (1978).

### INTOXICATION INSTRUCTION

 Vincente concedes that, at trial, his defense counsel did not object to the court's voluntary intoxication instruction. But he nevertheless claims that his conviction may be reversed because the trial court committed fundamental error when it gave the instruction for voluntary intoxication. "When confronted with a challenged instruction not objected to at trial, any error predicated on giving the instruction will be considered waived unless giving the instruction rose to the level of fundamental error." *Moore v. State,* 673 N.E.2d 776, 780 (Ind.Ct.App.1996). It is fundamental error to give an intoxication instruction which requires the defendant to make proof beyond a reasonable doubt or to prove specific facts. *See Hall v. State,* 574 N.E.2d 287, 288 (Ind.1991).

 At his trial, Vincente raised the defense of voluntary intoxication with respect to which his jury was instructed as follows:

Generally voluntary intoxication, as a result of being under the influence of alcohol, is not a defense to the commission of a crime.

However, intoxication is a defense to a crime if that intoxication was so extreme that the person was not capable of forming the intent necessary for the commission of the crime. The degree of intoxication, if any, is a question of fact to be decided by the jury as the trier of fact.

The burden of proof on the defense of intoxication is upon the defendant and the defendant must do more than merely raise the issue or possibility of his intoxication. He must put forth sufficient evidence, and this can be done through cross-examination of the State's witnesses, to create a reasonable doubt in the mind of the jury that he had the intent necessary to commit

either the crime charged in the charging information or the lesser included offense[.]

This does not shift the ultimate burden of proof in this case. The State must still prove to you beyond a reasonable doubt that the defendant had the intent required for the commission of murder as charged in the information or the lesser included offense of involuntary manslaughter.

R. 37. Vincente takes issue with the instruction's third paragraph, claiming it is fundamental error to instruct the jury that the defendant bears the burden of proving his intoxication defense. We disagree with this claim because the third paragraph of Vincente's intoxication instruction does not require the defendant to make proof beyond a reasonable doubt or to prove specific facts; rather, it is an accurate pronouncement of Indiana law. This conclusion is supported by *Fowler v. State,* in which our supreme court, using language nearly identical to that of Santana's instruction, held that:

It is often recognized that the burden of proof on the defense of intoxication is upon the defendant and the defendant must do more than merely raise the issue or possibility of his intoxication. He must put forth sufficient evidence to create a reasonable doubt in the mind of the trier of fact that he had the specific intent to commit the charged crime.

526 N.E.2d 1181, 1183 (Ind.1988). Because Vincente's intoxication instruction so closely tracks *Fowler's* correct statement of law, we cannot say that the trial court committed fundamental error when it gave this instruction.

### ASSISTANCE OF COUNSEL

 Vincente claims that he received the ineffective assistance of counsel when, at trial, his attorney failed to tender a voluntary manslaughter instruction.

In order to show ineffective assistance of counsel, Appellant must establish [1] that counsel's performance was deficient and

that such deficiency prejudiced his case. Appellant must show that in light of the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance consistent with elaborated prevailing professional norms. He must further show there is a reasonable probability but for counsel's unprofessional error the result of the proceedings would have been different.

*Haggenjos v. State,* 493 N.E.2d 448, 451 (Ind. 1986). "It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Steele v. State,* 536 N.E.2d 292, 293 (Ind.1989).

Vincente's attorney, when he chose not to tender a voluntary manslaughter instruction, exhibited professionally competent assistance. A defense attorney does not render ineffective assistance when he fails to tender an instruction which is not supported by the evidence and which the trial court would have properly refused to give. *See Forehand v. State,* 479 N.E.2d 552, 555 (Ind. 1985).

A voluntary manslaughter instruction is warranted if there is "any appreciable evidence of sudden heat[.]" *See Roark v. State,* 573 N.E.2d 881, 882 (Ind.1991). "Sudden heat" is "anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary man, which prevents deliberation and premeditation, excludes malice, and renders a person incapable of cool reflection." *Baird v. State,* 604 N.E.2d 1170, 1178 (Ind. 1992). The record indicates that Vincente became jealous and angry when he saw that Martin was inside Mary's house. Vincente then went to his house and retrieved a gun with which he intended to "hurt" Martin. Returning to Mary's house within about 30 minutes after he left there, Vincente shot Martin through an open window.

On these facts, we find no evidence that Vincente acted under sudden heat when he killed Martin. Although Vincente had been provoked to anger, he showed himself to be capable of deliberation and of cool reflection when he got into his car, traveled to his house, and retrieved the gun with which he intended to hurt Martin. Vincente also had "cooled-off" by the time he shot Martin, for although "sudden heat can survive for a while beyond the act of provocation[,]" *Roark,* 573 N.E.2d at 883, Vincente's sudden heat could not have survived the span of approximately 30 minutes which separated the initial provocation from the shooting of Martin. We conclude that a voluntary manslaughter instruction was not supported by the evidence and would have been properly refused by the trial court. Vincente's attorney therefore did not render ineffective assistance when he failed to tender this instruction.

Vincente also claims that his attorney rendered incompetent assistance when he failed to object to the court's intoxication instruction which stated that the defendant bore the burden of proving his intoxication defense. "To prevail on such a claim, appellant must demonstrate that a proper objection would have been sustained." *Barany v. State,* 658 N.E.2d 60, 66 (Ind.1995). Because we have concluded that the trial court's intoxication instruction was not erroneous, we cannot say that an objection to this instruction would have been sustained. Vincente's attorney therefore did not exhibit deficient performance by failing to object to this instruction.

Affirmed.

SHARPNACK, C.J., and KIRSCH, J., concur.